**Affirm and Opinion Filed July 30, 2014.**



In The
# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-13-01583-CV

### SEBASTIAN LOMBARDO, Appellant
### V.
### SHOUVIK BHATTACHARYYA, Appellee

**On Appeal from the 116th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC13-00133**

## OPINION

Before Justices Lang, Myers, and Brown
Opinion by Justice Lang

In this interlocutory appeal, Sebastian Lombardo appeals the trial court's order denying his special appearance, concluding the trial court had specific jurisdiction over Lombardo, in an action brought by Shouvik Bhattacharyya, alleging Lombardo is liable for intentional infliction of emotional distress, defamation, fraud, fraudulent inducement, and negligent misrepresentation. In five issues, Lombardo alleges the trial court erred when it: (1) overruled his written objection to Bhattacharyya's supplemental petition, which was filed four days before the special appearance hearing, because it alleged new claims for fraud and negligent misrepresentation, and the surprise was prejudicial; (2) denied his special appearance because he is protected by the fiduciary shield doctrine since his limited contacts were in his official, corporate capacity as Chief Executive Officer and Chairman of Valtech, S.A.; (3) denied his special appearance because there was no allegation or evidence of specific Texas contacts by Lombardo for each

claim, just vague and conclusory allegations of tortious conduct globally alleged against all of the defendants; (4) the evidence was legally and factually insufficient to support the trial court's findings of fact; and (5) denied his special appearance because the exercise of jurisdiction over Lombardo does not comport with traditional notions of fair play and substantial justice.

We conclude Lombardo did not preserve for appellate review his issue that the trial court erred when it overruled his written objection to Bhattacharyya's supplemental petition. Also, we need not address Lombardo's claim that the exercise of general jurisdiction is barred by the fiduciary shield doctrine because the trial court explicitly concluded there was specific jurisdiction. We conclude Lombardo failed to preserve for appellate review his contention that the fiduciary shield doctrine barred the exercise of specific jurisdiction. In addition, we conclude the evidence is legally and factually sufficient to support the trial court's challenged findings of fact. Finally, we conclude the trial court did not err when it concluded there were sufficient contacts with Texas and the exercise of personal jurisdiction over Lombardo comported with traditional notions of fair play and substantial justice. The trial court's order denying Lombardo's special appearance is affirmed.

## I. PROCEDURAL BACKGROUND

Bhattacharyya filed his original petition against Valtech Solutions, Inc., Lombardo, and Tomas Nores, alleging claims for breach of contract, a declaratory judgment, and attorneys' fees against Valtech Solutions, and defamation and intentional infliction of emotional distress against Valtech Solutions, Lombardo, and Nores. Bahttacharyya's claims arise from alleged promises and misrepresentations made to Bhattacharyya by Lombardo and other Valtech executives in Texas in relation to the acquisition of Adea, Inc., a Dallas-based software and information technology company, and the compensation promised to Bhattacharyya in relation to the acquisition, as well as allegedly defamatory statements made that asserted Bhattacharyya had

stated at the office of Valtech Solutions that he had brought a gun to that office, which were allegedly published in Texas by Lombardo and others. Bhattacharyya amended his petition to plead additional facts to support his claims. Valtech Solutions and Nores answered the lawsuit and counterclaimed.

Lombardo filed a special appearance and his verified statement, in which he identified himself as the chief executive officer and chairman of the board of Valtech, S.A., and an Italian citizen, who resides in Belgium and works at the Valtech headquarters in Paris, France. Valtech Solutions is a wholly-owned subsidiary of Valtech and is based in Dallas, Texas. Bhattacharyya filed his response to the special appearance, which also contained his verified statement and attached the declaration of Richard DuPont, the former chief financial officer of Adea and Valtech Solutions. Before the hearing on Lombardo's special appearance, Bhattacharyya filed a supplemental petition adding claims for fraud, fraudulent inducement, and negligent misrepresentation. Also, before the hearing, Lombardo filed an answer subject to his special appearance and a hearsay objection to a statement contained in Bhattacharyya's verified statement. After a hearing, the trial court denied Lombardo's special appearance, concluding there was specific, personal jurisdiction. In addition, the trial court's order denying Lombardo's special appearance contains findings of fact and conclusions of law.[1] After his special appearance was denied, Lombardo filed his written objection to the Bhattacharyya's special appearance, which it appears the trial court overruled.[2] This interlocutory appeal follows.

---

[1] The document in which the findings of fact and conclusions of law are contained is entitled, "Order on Defendant Sebastian Lombardo's Special Appearance, Findings of Fact, and Conclusions of Law." It is a fifteen-page narrative memorandum and the particular findings and conclusions are not separately identified as findings or conclusions and are not numbered. Accordingly, throughout this opinion, we identify the findings and conclusions, quoting them to the extent necessary, in order to consider the points raised by the parties.

[2] The order is not in the clerk's record. However, Bhattacharyya does not take issue with this assertion by Lombardo.

## II. BHATTACHARYYA'S SUPPLEMENTAL PETITION

In issue one, Lombardo argues the trial court erred when it denied his objection to Bhattacharyya's supplemental petition, which was filed four days before the special appearance hearing, because it alleged new claims for fraud and negligent misrepresentation, and the surprise was prejudicial. Lombardo claims that, although he did not object to the supplemental petition during the hearing, he filed a written objection after the trial court denied his special appearance, providing the trial court with the opportunity to remedy its error. Bhattacharyya responds that Lombardo waived this issue because his objection to the supplemental pleading was untimely.

### A. Applicable Law

Texas Rule of Civil Procedure 63 provides:

> Parties may amend their pleadings . . . provided, that any pleadings . . . offered for filing within seven days of trial or thereafter, or after such time as may be ordered by the judge under Rule 166, shall be filed only after leave of the judge is obtained, which leave shall be granted by the judge unless there is a showing that such filing will operate as a surprise to the opposite party.

TEX. R. CIV. P. 63. Accordingly, pleading amendments sought within seven days of the time of trial are to be granted unless there has been a showing of surprise to the opposite party. *Nichols v. Bridges*, 163 S.W.3d 776, 782 (Tex. App.—Texarkana 2005, no pet.). The language of rule 63 allows an amendment to a pleading within seven days of the "date of trial." TEX. R. CIV. P. 63; *Nichols*, 163 S.W.3d at 782. We have found no authority stating specifically that a special-appearance hearing is a "date of trial" as envisioned by rule 63. *Nichols*, 163 S.W.3d at 782 However, appellate courts have either assumed without deciding rule 63 applies or have applied it directly to special appearance hearings. *Hale v. Richey*, No. 10-11-00187-CV, 2012 WL 89920, at *5 (Tex. App.—Waco Jan. 11, 2012, no pet.) (mem. op.) (assumed without deciding rule 63 applies to special appearance hearing); *Nichols*, 163 S.W.3d at 782 (because special

–4–

appearance similar to a summary judgment, construed special appearance hearing as requiring trial court's approval to consider amended pleading filed within seven days of hearing date).

Texas Rule of Appellate Procedure 33.1 establishes the prerequisites for preserving an appellate complaint. TEX. R. APP. P. 33.1. To preserve a point for appellate review, a party must make a timely, specific objection or motion to the trial court that states the grounds for the ruling sought with sufficient specificity, unless the grounds are apparent from the context, obtain a ruling on the complaint, and comply with the rules of evidence or procedure. TEX. R. APP. P. 33.1.

### B. Application of the Law to the Facts

Assuming without deciding that rule 63 required Bhattacharyya to file his supplemental petition at least seven days before the special-appearance hearing or to obtain leave from the trial court to file the supplemental petition within seven days of the hearing, Lombardo was still required to make a timely complaint about the untimeliness of Bhattacharyya's supplemental petition. *See Hale*, 2012 WL 89920, at *5. The record shows that Bhattacharyya filed his supplemental petition on October 7, 2013. The special-appearance hearing was held on October 11, 2013. During the hearing, Lombardo's counsel made no objection to the filing of the supplemental petition, asserted no claim of surprise, and did not request a continuance to properly respond to the supplemental petition. *See Hale*, 2012 WL 89920, at *6. Instead, Lombardo's counsel advised the trial court "Your Honor, we are prepared—it doesn't change any of our positions from a legal standpoint that we will address with the Court." The trial court signed its order denying Lombardo's special appearance on October 22, 2013. Then, on November 1, 2013, Lombardo filed his written objection to Bhattacharyya's supplemental petition. According to the parties, on November 6, 2013, the trial court overruled Lombardo's objection to Bhattacharyya's supplemental petition. We conclude Lombardo did not preserve for

appellate review his issue that the trial court erred when it overruled his written objection to Bhattacharyya's supplemental petition because Lombardo did not make a timely objection. TEX. R. APP. P. 33.1. Accordingly, we will consider Bhattacharyya's supplemental petition when determining whether he alleged sufficient facts to permit the trial court to exercise personal jurisdiction over Lombardo. *See Hale*, 2012 WL 89920, at *6.

Issue one was not preserved for appellate review.

## III.  FIDUCIARY SHIELD DOCTRINE

In issue two, Lombardo argues the trial court erred when it denied his special appearance because he is protected from the exercise of general and specific jurisdiction by the fiduciary shield doctrine since his limited contacts were in his official, corporate capacity as chief executive officer and chairman of Valtech.

### A.  General Jurisdiction Barred by Fiduciary Shield Doctrine

In the first part of issue two, Lombardo argues the trial court erred when it concluded there was general jurisdiction over him because he is protected by the fiduciary shield doctrine. Lombardo contends that Bhattacharyya did not explicitly argue there was general jurisdiction, the trial court made no findings of fact or conclusions of law with regard to general jurisdiction, and "the fiduciary shield doctrine insulates [him] from general jurisdiction." Bhattacharyya responds that he did not assert general jurisdiction and the trial court found that it had specific jurisdiction over Lombardo so this issue is irrelevant to this appeal. The trial court's order denying Lombardo's special appearance specifically states, "The Court has specific jurisdiction over [] Lombardo." Accordingly, we need not review the part of issue two that argues the trial court's conclusion that there was general jurisdiction over Lombardo was barred by the fiduciary shield doctrine.

## B. Specific Jurisdiction is Not Barred by the Fiduciary Shield Doctrine

In the second part of issue two, Lombardo argues the trial court erred when it concluded it had specific jurisdiction over him because he is protected by the fiduciary shield doctrine. Lombardo contends that the tort claims asserted by Bhattacharyya are really contract claims to which the fiduciary shield doctrine applies. Bhattacharyya responds that his "allegations against Lombardo sound solely in tort and constitute independent torts committed by Lombardo in Texas."

As we previously noted, Texas Rule of Appellate Procedure 33.1 establishes the prerequisites for preserving an appellate complaint. TEX. R. APP. P. 33.1. To preserve a point for appellate review, a party must make a timely, specific objection or motion to the trial court that states the grounds for the ruling sought with sufficient specificity, unless the grounds are apparent from the context, obtain a ruling on the complaint, and comply with the rules of evidence or procedure. TEX. R. APP. P. 33.1.

The record shows that Lombardo makes the following argument relating to the fiduciary shield doctrine in his special appearance:

> "As a general rule, jurisdiction over an individual cannot be based upon jurisdiction over a corporation." *Nichols v. Tseng Hsiang Lin*, 282 S.W.3d 743, 750 (Tex. App.—Dallas 2009[, no pet.]) [(discussing general jurisdiction)]. Under Texas law, actions undertaken by a business agent as an agent cannot create personal jurisdiction over the agent in his individual capacity and being an investor, or agent of an investor, in a business that has contacts with the state does not make the agent subject to the jurisdiction of the state. *See Carone v. Retamco Operating, Inc.*, 138 S.W.3d 1, 12 (Tex. App.—San Antonio 2004, pet. denied) [(discussing general jurisdiction)]; *Siskind v. Villa Found. for Educ., Inc.*, 642 S.W.2d 434, 438 (Tex. 1982) (noting that fiduciary shield precludes personal jurisdiction over individual whose only contacts with Texas were solely as corporate officer). To hold otherwise would violate fundamental concepts of fair play and make every agent of an investor in a national business personally subject to the jurisdiction of each state where the national business has contacts.
>
> . . . .

> The legal arguments and authorities explaining why the [trial] [c]ourt lacks jurisdiction over Lombardo are fully explained in Lombardo's [b]rief in [s]upport of [h]is [v]erified[s]pecial [a]ppearance.

Lombardo's brief in support of his special appearance argues only that the fiduciary shield doctrine bars the exercise of general jurisdiction over Lombardo. Further, during the hearing on Lombardo's special appearance the following exchange occurred as to the fiduciary shield doctrine:

Trial Court: Okay. So the Court's analysis as it relates to special appearance, first let's talk about this fiduciary shield doctrine—

Lombardo's Counsel: Yes.

Trial Court: —which has been advanced, and I think a fair reading of the case law suggests that that's a theory that really relates to general jurisdiction issues and this is really about specific jurisdiction.

Lombardo's Counsel: We agree at this point, yes.

Accordingly, we conclude Lombardo did not preserve for appellate review his issue that asserts the trial court erred when it concluded it had specific jurisdiction over him because he is protected by the fiduciary shield doctrine. TEX. R. APP. P. 33.1.

The second part of issue two was not preserved for appellate review.

## IV. SUFFICIENCY OF THE EVIDENCE TO SUPPORT FINDINGS OF FACT

In issue four, Lombardo argues the evidence was legally and factually insufficient to support the trial court's findings of fact.[3] Lombardo challenges eight of the trial court's findings

---

[3] Lombardo also broadly contends the evidence is legally and factually insufficient to support all of the findings of fact. Specifically, Lombardo states, "The Trial Court's Order and Findings of Fact and Conclusion of Law combine its factual findings and analysis, without enumerating each finding. Lombardo attempts to isolate the Trial Court's findings of fact and challenge them individually, but also challenges all of the findings generally." An appellant's brief "must contain a clear and concise argument for the contentions made, with appropriate citations to the authorities and to the record." TEX. R. APP. P. 38.1(i). If the appellant does not do so, he waives the issue on appeal. *Bogart v. Star Bldg. Sys.*, No. 01-10-00446-CV, 2011 WL 846566, at *2 n.3 (Tex. App.—Houston [1st Dist.] Mar. 10, 2011, pet. denied) (mem. op.). However, the trial court made several findings of fact that Lombardo did not object to specifically in his brief nor does he discuss why those findings are not supported by evidence. Accordingly, any points objecting to those unspecified findings of fact to which only a general objection was made are waived and we will not address any such unspecified findings of fact. *See id.*

of fact.[4]  Bhattacharyya responds that the trial court's findings of fact are supported by the evidence.  As previously noted, the trial court's findings of fact and conclusions of law are rendered in memorandum opinion and narrative format.  Accordingly, the findings and conclusions are not set out in separately numbered paragraphs.

### A.  Standard of Review

When determining a special appearance, the trial court must frequently resolve fact questions before deciding the jurisdictional question.  *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002); *Assurances Generales Banque Nationale v. Dhalla*, 282 S.W.3d 688, 694–95 (Tex. App.—Dallas 2009, no pet.); *Capital Tech. Info. Servs., Inc. v. Arias & Arias Consultores*, 270 S.W.3d 741, 748 (Tex. App.—Dallas 2008, pet. denied) (en banc).  The trial court's findings of fact are binding upon the court of appeals, unless challenged on appeal.  *MasterGuard L.P. v. Eco Technologies Int'l L.L.C.*, No. 05-12-01218-CV, 2013 WL 4482976, at *5 (Tex. App.—Dallas Aug. 22, 2013, no pet.); *Hotel Partners v. KPMG Peat Marwick*, 847 S.W.2d 630, 632 (Tex. App.—Dallas  1993, writ denied).  When a trial court's findings of fact are unchallenged on appeal, they occupy the same position and are entitled to the same weight as the verdict of a jury.  *Davey v. Shaw*, 225 S.W.3d 843, 849 (Tex. App.—Dallas 2007, no pet.) (citing *McGalliard v. Kuhlmann*, 722 S.W.2d 694, 696 (Tex. 1986)).

However, if the trial court issues findings of fact and conclusions of law in connection with its ruling on a special appearance, the appellant may challenge the fact findings on legal and factual sufficiency grounds.  *See BMC Software*, 83 S.W.3d at 794.  A legal sufficiency challenge to the findings of fact fails if there is more than a scintilla of the evidence to support the findings.  *See BMC Software*, 83 S.W.3d at 795.  In conducting a factual sufficiency review,

---

[4] Lombardo argues the evidence is legally and factually insufficient to support eleven specific findings of fact.  Three of those are actually conclusions of law and one of the findings challenged is actually two separate findings.  Accordingly, we address only the sufficiency of the evidence to support the findings of fact that are specifically addressed by Lombardo.  We will address the trial court's conclusions of law in the portion of this opinion addressing issue three.

appellate courts may set aside the trial court's finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong or unjust. *See Hoffmann v. Dandurand*, 180 S.W.3d 340, 345 (Tex. App.—Dallas 2005, no pet.).

### B. Application of the Law to the Facts

**1. Finding of Fact: "Bhattacharyya and [] Lombardo had long hours of discussion at the N[YLO] Hotel in Irving, at Adea's offices in Dallas, and at restaurants in the Dallas area."**

The first of Lombardo's challenges as to the legal and factual sufficiency of the evidence to support the trial court's specific finding is the finding that "Bhattacharyya and [] Lombardo had long hours of discussion at the N[YLO] Hotel in Irving, at Adea's offices in Dallas, and at restaurants in the Dallas area." Lombardo argues the "Trial Court took liberties with the Record" and "Bhattacharyya vaguely stated that he 'had discussions' with Lombardo and remembers picking Lombardo up from the airport [without any clarification as to which airport] and having 'long hours of discussion' on the Adea-Valtech transaction."[5] (Brackets in orig.).

The record shows that the trial court's finding is supported by the following statements in Bhattacharyya's verified response opposing Lombardo's special appearance:

> [L]ombardo first visited Dallas in connection with the Adea acquisition in the Summer of 2009, along with [] Nores and two other associates. For the next 18 months, until the acquisition of Adea in December 2010, he was actively involved in the acquisition process. He visited Dallas and had detailed discussions with me on (1) the approach for merging the two companies, (2) details of the Asset Purchase Agreement, (3) incentives for me and the Adea team, (4) the strategy of the combined entities, and (5) my role in Valtech.
>
> . . . .
>
> I had discussions with [] Lombardo at the N[YLO] hotel in Irving, at Adea's offices in Irving, and at restaurants in the Dallas area. I also remember picking

---

[5] Lombardo also argues "the 'long hours' are not tied to any contact in Texas, and there are no dates corresponding to when any of these 'discussions' occurred." This argument attacks the trial court's legal conclusion that "Lombardo has failed to carry the burden to negate this basis for the assertion of personal jurisdiction over [] Lombardo on [] Bhattacharya's claims for fraud, fraudulent inducement, and negligent misrepresentation related to the formation of the Employment Agreement," which is supported by complained-of finding of fact. Further, we note that Lombardo does not specifically challenge the trial court's findings of fact that "Lombardo does not deny that any of these discussions took place" and "Lombardo's verified statement is silent as to whether or not he had any of the discussions or made any of the promises that were not kept, as set out in [] Bhattacharyya's verified statement."

–10–

him up from the airport, playing a CD of Argentinian music (since he is from there), and then having long hours of discussion on the Adea-Valtech transaction.

Also, the declaration of DuPont states, "I am the former Chief Financial Officer of Valtech . . . and served as the CFO of Adea . . . at the time it was acquired by Valtech," "In my capacity as Adea's CFO, I personally participated in negotiations with Valtech executives over the terms of the acquisition, which culminated in an Asset Purchase Agreement ("APA") between Adea and Valtech," and "Lombardo personally attended at least one meeting in Dallas where the terms of the APA were discussed." Further, Lombardo does not specifically challenge the trial court's findings of fact that "Lombardo does not deny that any of these discussions took place" and "Lombardo's verified statement is silent as to whether or not he had any of the discussions or made any of the promises that were not kept, as set out in [] Bhattacharyya's verified statement." Accordingly, we conclude there is legally and factually sufficient evidence to support the trial court's finding of fact that "Bhattacharyya and [] Lombardo had long hours of discussion at the N[YLO] Hotel in Irving, at Adea's offices in Dallas, and at restaurants in the Dallas area."

## 2. Finding of Fact: "These discussions include several promises made by [] Lombardo to compensate [] Bhattacharyya for his commitment and sacrifices at Adea since [] Bhattacharyya had led Adea as CEO from 2006 to 2010, and promises that [] Lombardo would 'take care' of [] Bhattacharyya."

Second, Lombardo challenges the legal and factual sufficiency of the evidence to support the trial court's finding that "These discussions include several promises made by [] Lombardo to compensate [] Bhattacharyya for his commitment and sacrifices at Adea since [] Bhattacharyya had led Adea as CEO from 2006 to 2010, and promises that [] Lombardo would 'take care' of [] Bhattacharyya." Lombardo contends there is nothing in the record showing these statements occurred in Texas. However, the record shows that the trial court's finding is supported by the following statements in Bhattacharyya's verified response opposing Lombardo's special appearance:

–11–

[Lombardo] visited Dallas and had detailed discussions with me on (1) the approach for merging the two companies, (2) details of the Asset Purchase Agreement, (3) incentives for me and the Adea team, (4) the strategy of the combined entities, and (5) my role in Valtech. He made several promises to me, including a promise to compensate me for my commitment and sacrifices at Adea since I had led Adea as CEO from 2006 to 2010.

. . . .

Throughout 2010, Mr. Lombardo made repeated promises on how he would "take care" of me and my team, and acknowledged how I had provided strong leadership to keep the customers, employees and key stakeholders together.

Also, Lombardo argues that Bhattacharyya admitted these alleged statements were not made in Texas when he stated, "if [Lombardo] was not able to come to Dallas, he would send his representative [] Nores as his representative." However, Lombardo takes this statement out of context. Bhattacharyya's statement is part of the following paragraph and does not serve as an admission that Lombardo's statements were made outside of Texas as Lombardo suggests:

Throughout 2010, [] Lombardo made repeated promises on how he would "take care" of me and my team, and acknowledged how I had provided strong leadership to keep the customers, employees and key stakeholders together. While [] Lombardo worked on taking over Valtech in March 2010, I patiently waited for nine months for him and his team to close the Adea transaction. I had complete faith in Mr. Lombardo—although he kept delaying the process—as he was intimately involved in the negotiations. If he was not able to come to Dallas, he would send [] Nores as his representative to negotiate the APA. He was also involved in discussions with Adea's creditors, namely Growth Capital Partners.

Further, Lombardo contends he denied these allegations and generally points us to his verified special appearance. Lombardo's verified statement states, "I did not travel to Texas to participate in the negotiations of the asset purchase." This argument appears to challenge the trial court's finding that "Lombardo does not specifically deny that any of these discussions took place." However, Lombardo does not specifically challenge the trial court's findings of fact that "Lombardo did state that he did not visit Dallas to participate in negotiations over the APA, a statement that is contradicted by the sworn declarations of [] Bhattacharyya and [] DuPont," "These negotiations and discussions culminated in the formation of the APA, and []

–12–

Bhattacharyya's execution of an Employment Agreement with Valtech," and "Lombardo's verified statement is silent as to whether or not he had any of the discussions or made any of the promises that were not kept, as set out in [] Bhattacharyya's verified statement."

We conclude that there is legally and factually sufficient evidence to support the trial court's finding that "These discussions include several promises made by [] Lombardo to compensate [] Bhattacharyya for his commitment and sacrifices at Adea since [] Bhattacharyya had led Adea as CEO from 2006 to 2010, and promises that [] Lombardo would 'take care' of [] Bhattacharyya."

### 3. Finding of Fact: "Nor does Lombardo deny making the April 30, 2012 phone call discussed in [] Bhattacharyya's declaration."

Third, Lombardo challenges the legal and factual sufficiency of the evidence to support the trial court's finding of fact that "Nor does Lombardo deny making the April 30, 2012 phone call discussed in [] Bhattacharyya's declaration." Lombardo argues the evidence only establishes that Lombardo called Bhattacharyya on April 30, 2012, not that the phone call was connected to Texas. Bhattacharyya responds that the evidence shows Lombardo called Bhattacharyya on April 30, 2012, and during that call, Lombardo made promises, those promises were made in Dallas, Texas, and the promises were not kept. In his verified statement, Bhattacharyya states:

> Around April 30, 2012, [] Lombardo called me and wanted to have dinner alone with my wife in Dallas to assure her that I would be given my performance bonus and shares/options. He even promised me shares in another entity (Siegco) so that I could have a bigger upside. He also mentioned another entity (sounded like "Cosmo-little") where he would give me options. He explained that I would have to put in some money in that case, and he would provide details later. These promises were made in Dallas, Texas, and were not kept.

Lombardo's verified statement confirms he was in Dallas, Texas on April 30, 2012, stating, "The second occasion I travelled to Texas was on April 30, 2012. I flew from Miami, Florida, and landed at DFW Airport on April 30, 2012, at 7:40 p.m.; I left Texas on May 1, 2012, on a flight

–13–

from DFW Airport on May 1, 2012 at 4:00 p.m." Accordingly, we conclude there is legally and factually sufficient evidence to support the trial court's finding that "Nor does Lombardo deny making the April 30, 2012 phone call discussed in [] Bhattacharyya's declaration."

**4. Finding of Fact: "Lombardo responded to [] Bhattacharyya's notice by sending him letters dated November 6, 2012 and November 12, 2012, both of which [] Bhattacharyya received in Texas."**

Fourth, Lombardo challenges the legal and factual sufficiency of the evidence to support the trial court's finding that "Lombardo responded to [] Bhattacharyya's notice by sending him letters dated November 6, 2012 and November 12, 2012, both of which [] Bhattacharyya received in Texas." Lombardo argues that the record shows he finalized and approved the November 6 and 12, 2012 letters from Paris and Brussels, then sent them to Attaway so they could be delivered to Bhattacharyya's counsel. The record shows that these letters were attached to Lombardo's verified special appearance as Exhibit Nos. 4 and 5. Both of these letters are addressed to Bhattacharyya at an address in Coppell, Texas, and indicate that they were hand delivered. Also, both letters were signed by Lombardo. These exhibits also contain e-mails to Bhattacharyya's legal counsel stating, "Enclosed is a copy of a letter from Chairman & CEO of Valtech Group, [] Lombardo, which will be delivered to [Bhattacharyya] this afternoon by [] Attaway, the Company's Director of Human Resources." Further, Lombardo does not challenge the trial court's findings of fact that "In those letters, [] Lombardo promised to pay [] Bhattacharyya's 2011 performance bonus, and urged [] Bhattacharyya to withdraw his notice of intent to terminate the Employment Agreement" and "After receiving these written promises from [] Lombardo, [] Bhattacharyya withdrew his notice on November 13, 2012." Accordingly, we conclude that there is legally and factually sufficient evidence to support the trial court's finding that "Lombardo responded to [] Bhattacharyya's notice by sending him letters dated November 6, 2012 and November 12, 2012, both of which [] Bhattacharyya received in Texas."

**5. Finding of Fact: "Following [] Bhattacharyya's withdrawal of notice of intent to terminate the Employment Agreement, [] Lombardo again travelled to Dallas on November 26, 2012 to discuss [] Bhattacharyya's employment at Valtech."**

Fifth, Lombardo challenges the legal and factual sufficiency of the evidence to support the trial court's finding that "Following [] Bhattacharyya's withdrawal of notice of intent to terminate the Employment Agreement, [] Lombardo again travelled to Dallas on November 26, 2012 to discuss [] Bhattacharyya's employment at Valtech." Lombardo contends there is no evidence that he discussed Bhattacharyya's employment. Instead, he claims the record shows that he travelled to Dallas to reassure Valtech Solutions' employees and receive an update on Attaway's investigation.[6]

The record shows that Lombardo's verified statement includes the following statement regarding his visit to Texas on November 26, 2012:

> The third and final occasion that I travelled to Texas, through the present date, occurred on November 26, 2012. On this occasion, I flew from Fort Lauderdale, Florida and landed at DFW Airport on November 26, 2012, at 12:40 p.m.; I left Texas on November 28, 2012, on a flight from DFW Airport at 10:05 a.m. to New York. The purpose of this trip was also in connection with my duties and responsibilities of CEO/Chairman of Valtech S.A. [] Nores had requested that I visit Valtech Solutions' office in Dallas because he thought my presence would reassure its employees of Valtech S.A.'s commitment to Valtech Solutions. In addition, Valtech Solutions' Director of Human Resources, [] Attaway, had been involved in the investigation of the statement reported by employees of Valtech Solutions by [Bhattacharyya], that while in he was in the office prior to meeting with [] Attaway[,] [] [Bhattacharyya] had told the employees that he was carrying a gun. I wanted to visit personally with [] Attaway to receive an update on her investigation. After conducting these meetings, I departed Texas from DFW Airport on November 28, 2012, at 10:00 a.m. on a flight to New York. The total time that I was in Texas on this trip was 45.5 hours.

Also, Lombardo's verified statement includes the following description of the events leading to the November 30, 2012, letter terminating Bhattacharyya's employment:

---

[6] Lombardo does not specifically challenge the trial court's finding of fact that "Bhattacharyya withdrew his notice [of intent to terminate the Employment Agreement] on November 13, 2012."

–15–

As previously noted, as Chairman and CEO of Valtech S.A., after: receiving reports about the statement by [Bhattacharyya] to Valtech Solutions' employees that, while in the office he was carrying a gun; reviewing the statements from the two employees to whom [Bhattacharyya] had made this statement; being informed by [] Attaway and [] Nores[] of their subsequent interview of [Bhattacharyya] about his statement; and being informed by [] Attaway concerning Valtech Solutions' policy about guns in the workplace, I concluded that [Bhattacharyya's] employment should be terminated for cause.

Further, Lombardo's verified statement confirms that he spoke with Attaway about Bhattacharyya's employment as follows:

I have not spoken about [Bhattacharyya's] employment, termination, or his statement to Valtech Solutions['] employees about carrying a gun in the office with any other person, company, customer, or third party. The only persons that I have discussed such matters with are the attorneys who are representing me in this case, [] Attaway, [] Nores, and [] Padiou.

However, we note that the record shows that Attaway was the Director of Human Resources for Valtech Solutions.

We conclude that there is legally and factually sufficient evidence to support the trial court's finding that "Following [] Bhattacharyya's withdrawal of notice of intent to terminate the Employment Agreement, [] Lombardo again travelled to Dallas on November 26, 2012 to discuss [] Bhattacharyya's employment at Valtech."

### 6.  Finding of Fact: "During this visit, [] Lombardo 'discussed' alleged defamatory statements made by two Valtech employees, and received an update on an internal 'investigation' of [] Bhattacharyya that began on the same day [] Bhattacharyya withdrew his notice."

Sixth, Lombardo challenges the legal and factual sufficiency of the evidence to support the trial court's finding that "During this visit, [] Lombardo 'discussed' alleged defamatory statements made by two Valtech employees, and received an update on an internal 'investigation' of [] Bhattacharyya that began on the same day [] Bhattacharyya withdrew his notice."[7] Without more, Lombardo argues the portion of the finding that states the investigation

---

[7]  In his brief on appeal, Lombardo treats this finding of fact as two separate findings.

began on the same day Bhattacharyya withdrew his notice of termination "should be disregarded." As we previously noted, Lombardo does not specifically challenge the trial court's finding of fact that "Bhattacharyya withdrew his notice [of intent to terminate the Employment Agreement] on November 13, 2012." Attached to Lombardo's verified special appearance as Exhibit No. 7 are the signed statements of Shankar and Gvozdenovic, which described the alleged statements by Bhattacharyya that he had brought a gun to work. These statements are dated November 14, 2012 and do not state what day the alleged events occurred, they only provide an approximate time of day. However, Lombardo's verified statement includes the following description of his Exhibit No. 7:

> November 14, 2014. (Ex. 7 is a true and correct copy of handwritten statements signed by two Valtech Solutions employees ([] Shankar and [] Gvozdenovic) who reported that on November 13, 2012, when [Bhattachryya] appeared unannounced in Valtech Solutions' office to meet with [] Attaway, [Bhattacharyya] had made the statement to them that he was carrying a gun and asked the employees to watch his back.)

> [A]ttaway and our attorney both e-mailed a copy of these two statements to me on November 14, at my e-mail address in France where I reviewed them, and after speaking by phone while I was in France with [] Attaway and [] Nores, concluded, as CEO/Chairman of Valtech S.A., that **until further investigation could be conducted** it would be inappropriate for Plaintiff to be on Valtech Solutions' property.

(Emphasis added).

Next, we examine the remainder of the trial court's finding of fact that "During this visit, [] Lombardo 'discussed' alleged defamatory statements made by two Valtech employees, and received an update on an internal 'investigation' of [] Bhattacharyya." Lombardo argues "The [t]rial [c]ourt made significant leaps and assumptions to reach this finding, which is not supported by the [r]ecord. Bhattacharyya failed to allege what if any conduct in Texas by Lombardo formed the basis of his defamation and [intentional infliction of emotional distress] claims. The [t]rial [c]ourt acknowledged this fact." Bhattacharyya concedes that the record is

–17–

not clear whether the investigation began on November 13, 2012 or November 14, 2012, but maintains that it is "irrelevant" to the ultimate jurisdictional analysis.

Lombardo's verified statement includes the following statement regarding his visit to Texas on November 26, 2012:

> In addition, Valtech Solutions' Director of Human Resources, [] Attaway, had been involved in the investigation of the statement reported by employees of Valtech Solutions by [Bhattacharyya], that while in he was in the office prior to meeting with [] Attaway [] [Bhattacharyya] had told the employees that he was carrying a gun. I wanted to visit personally with [] Attaway to receive an update on her investigation.

In addition, Lombardo's verified statement confirms that he spoke with Attaway, Nores, and Padiou about Bhattacharyya's employment, termination, and statement to Valtech Solutions employees about carrying a gun in the office.

We conclude the evidence is legally and factually sufficient to support the trial court's finding that "During this visit, [] Lombardo 'discussed' alleged defamatory statements made by two Valtech employees, and received an update on an internal 'investigation' of [] Bhattacharyya that began on the same day [] Bhattacharyya withdrew his notice."

7.  **Finding of Fact: "Lombardo voluntarily travelled to Texas to participate in discussions about the investigation that forms the basis of [] Bhattachar[y]ya's claims."**

Seventh, Lombardo challenges the legal and factual sufficiency of the evidence to support the trial court's finding that "Lombardo voluntarily travelled to Texas to participate in discussions about the investigation that forms the basis of [] Bhattachar[y]ya's claims."[8] The entirety of Lombardo's argument is that:

> [T]he [t]rial [c]ourt made significant leaps and assumptions to reach this finding, which is not supported by the [r]ecord. Bhattacharyya failed to allege what if any conduct in Texas by Lombardo formed the basis of his defamation and

---

[8] In his brief on appeal, Lombardo combines his argument challenging this finding with his argument challenging the second half of the finding discussed in the immediately preceding section.

[intentional infliction of emotional distress] claims. The [t]rial [c]ourt acknowledged this fact. This finding should be disregarded.

As we previously noted, Lombardo stated in his verified statement that while he was in Dallas, Texas, visiting the Valtech Solutions office at the request of Nores, he "visit[ed] personally with [] Attaway to receive an update on her investigation." Accordingly, we conclude the evidence is legally and factually sufficient to support the trial court's finding of fact that "Lombardo voluntarily travelled to Texas to participate in discussions about the investigation that forms the basis of [] Bhattachar[y]ya's claims."

**8. Finding of Fact: "Bhattacharyya was terminated 'for Cause' on November 30, 2012 via correspondence from [] Lombardo that [] Bhattacharyya received in Texas."**

Finally, Lombardo challenges the legal and factual sufficiency of the evidence to support the trial court's finding that "Bhattacharyya was terminated 'for Cause' on November 30, 2012 via correspondence from [] Lombardo that [] Bhattacharyya received in Texas." Lombardo argues that the trial court "took liberties with the [r]ecord and found facts that are not supported by the [r]ecord." Lombardo claims the November 30, 2012 letter was sent by e-mail from Lombardo, who was in New York at the time, to Valtech's counsel in Dallas, Texas, for delivery to Bhattacharyya's lawyer in Addision, Texas. As previously discussed, Lombardo's verified statement includes a description of the events leading to the November 30, 2012 letter terminating Bhattacharyya's employment and states, in part, "I concluded that [Bhattacharyya's] employment should be terminated for cause." A copy of that letter was attached to his special appearance as Exhibit No. 9. The letter is addressed to Bhattacharyya and his legal counsel, but states it was sent by facsimile to his legal counsel, and it is signed by Lombardo. However, the salutation of the letter only addresses Bhattacharyya. Also, the first paragraph of the letter states, "I apologize for not being able to speak with you personally instead of having to provide this information to you in this manner. However, the Company has been instructed by your attorneys

–19–

that all communications with you must go through your lawyers." Accordingly, we conclude there is legally and factually sufficient evidence to support the trial court's finding that "Bhattacharyya was terminated 'for Cause' on November 30, 2012 via correspondence from [] Lombardo that [] Bhattacharyya received in Texas."

We conclude there is legally and factually sufficient evidence to support the trial court's challenged findings of fact. Issue four is decided against Lombardo.

## V. TRIAL COURT'S CONCLUSIONS OF LAW

In issues three and five, Lombardo argues the trial court erred when it denied his special appearance because there was no allegation or evidence of specific Texas contacts by Lombardo for each claim and the exercise of jurisdiction over Lombardo does not comport with traditional notions of fair play and substantial justice.

### A. Standard of Review

Whether a trial court has personal jurisdiction over a nonresident defendant is a question of law. *Moncrief Oil Int'l Inc. v. OAO Gazprom*, 414 S.W.3d 142, 150 (Tex. 2013); *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 790–91 (Tex. 2005); *BMC Software*, 83 S.W.3d at 794; *Am. Type Culture Collection v. Coleman*, 83 S.W.3d 801, 805–06 (Tex. 2002); *Assurances Generales*, 282 S.W.3d at 694; *Capital Tech.*, 270 S.W.3d at 747. Because the trial court's exercise of personal jurisdiction over a nonresident defendant is one of law, an appellate court reviews the trial court's legal conclusions de novo. *Moncrief*, 414 S.W.3d at 150; *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 574 (Tex. 2007); *BMC Software*, 83 S.W.3d at 794; *Suzlon Energy Ltd. v. Trinity Structural Towers, Inc.*, No. 05-13-00798-CV, 2014 WL 2735663, at *2 (Tex. App.—Dallas Jun. 17, 2014, no pet. h.); *Assurances Generales*, 282 S.W.3d at 694; *Capital Tech.*, 270 S.W.3d at 748.

### B. Burdens of Parties in Special Appearance

The plaintiff bears the initial burden of pleading sufficient allegations to bring a nonresident defendant within the provisions of the Texas long-arm statute. *Moncrief*, 4141 S.W.3d at 149; *Moki Mac*, 221 S.W.3d at 574; *BMC Software*, 83 S.W.3d at 793; *Am. Type*, 83 S.W.3d at 807; *Assurances Generales*, 282 S.W.3d at 695; *Capital Tech.*, 270 S.W.3d at 748. This minimal pleading requirement is satisfied by an allegation that the nonresident defendant is doing business in Texas. *Assurances Generales*, 282 S.W.3d at 695.

The nonresident defendant has the burden of negating all bases of jurisdiction alleged in the plaintiff's petition. *Moncrief*, 414 S.W.3d at 149; *Moki Mac*, 221 S.W.3d at 574; *BMC Software*, 83 S.W.3d at 793; *Am. Type*, 83 S.W.3d at 807; *Assurances Generales*, 282 S.W.3d at 695; *Capital Tech.*, 270 S.W.3d at 748. If the plaintiff does not allege jurisdictional facts showing the nonresident defendant has committed an act in Texas, the nonresident defendant can meet its burden of negating jurisdiction by presenting evidence that it is a nonresident. *Assurances Generales*, 282 S.W.3d at 695. If the nonresident defendant produces evidence negating personal jurisdiction, the burden returns to the plaintiff to show, as a matter of law, that the court has personal jurisdiction over the nonresident defendant. *Assurances Generales*, 282 S.W.3d at 695.

### C. In Personam Jurisdiction

The nature of the evidence a party must adduce to meet its burden of proof is defined by the Constitution, the Texas Legislature, statutes, and the case law. Texas courts may assert in personam jurisdiction over a nonresident defendant if: (1) the Texas long-arm statute authorizes the exercise of jurisdiction; and (2) the exercise of jurisdiction is consistent with federal and state constitutional due process guarantees. *Moncrief*, 414 S.W.3d at 149; *Moki Mac*, 221 S.W.3d at 574; *Am. Type*, 83 S.W.3d at 806; *Assurances Generales*, 282 S.W.3d at 695–96.

## 1. Texas Long–Arm Statute

The Texas long-arm statute governs Texas courts' exercise of jurisdiction over nonresident defendants. *See* TEX. CIV. PRAC. & REM. CODE ANN. §§ 17.041–17.045 (West 2008); *PHC–Minden, L.P. v. Kimberly–Clark Corp.*, 235 S.W.3d 163, 166 (Tex. 2007); *BMC Software*, 83 S.W.3d at 795; *Assurances Generales*, 282 S.W.3d at 696. The long-arm statute sets out a list of activities that constitute doing business in Texas. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 17.042; *PHC–Minden*, 235 S.W.3d at 166; *BMC Software*, 83 S.W.3d at 795; *Assurances Generales*, 282 S.W.3d at 696. Specifically, the long-arm statute allows the exercise of personal jurisdiction over a defendant who "commits a tort in whole or in part in this state." TEX. CIV. PRAC. & REM. CODE ANN. § 17.042(2); *Moncrief*, 414 S.W.3d at 149. However, this list is not exhaustive. *PHC–Minden*, 235 S.W.3d at 166; *BMC Software*, 83 S.W.3d at 795; *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991); *Assurances Generales*, 282 S.W.3d at 696. The broad language of section 17.042 extends Texas courts' personal jurisdiction "as far as the federal constitutional requirements of due process will permit." *PHC–Minden*, 235 S.W.3d at 166; *Moki Mac*, 221 S.W.3d at 575; *BMC Software*, 83 S.W.3d at 795; *Am. Type*, 83 S.W.3d at 807; *Guardian Royal*, 815 S.W.2d at 226; *Assurances Generales*, 282 S.W.3d at 696; *Capital Tech.*, 270 S.W.3d at 748.

## 2. Due Process

In addition to the long-arm statute, the exercise of in personam jurisdiction over a nonresident defendant must satisfy federal due process requirements. *See Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal., Solano County*, 480 U.S. 102, 108 (1987); *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *PHC–Minden*, 235 S.W.3d at 166; *Moki Mac*, 221 S.W.3d at 575; *Assurances Generales*, 282 S.W.3d at 696. Under the Due Process Clause of the Fourteenth Amendment, personal jurisdiction over a nonresident defendant is constitutional

when: (a) the nonresident defendant has established minimum contacts with the forum state; and (b) the exercise of jurisdiction comports with traditional notions of fair play and substantial justice. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984); *Int'l Shoe*, 326 U.S. at 316; *Moncrief*, 414 S.W.3d at 150; *PHC–Minden*, 235 S.W.3d at 166; *Moki Mac*, 221 S.W.3d at 575; *BMC Software*, 83 S.W.3d at 795; *Am. Type*, 83 S.W.3d at 806; *Guardian Royal*, 815 S.W.2d at 226; *Assurances Generales*, 282 S.W.3d at 696; *Capital Tech.*, 270 S.W.3d at 748.

### a. Minimum Contacts

The purpose of the minimum contacts analysis is to protect a nonresident defendant from being haled into court when its relationship with the forum state is too attenuated to support jurisdiction. *Am. Type*, 83 S.W.3d at 806; *Assurances Generales*, 282 S.W.3d at 696. The focus of the minimum contacts analysis is on the nonresident defendant's activities and expectations. *Michiana*, 168 S.W.3d at 790; *Am. Type*, 83 S.W.3d at 806; *Assurances Generales*, 282 S.W.3d at 696. A nonresident defendant's contacts with a forum state can give rise to: (1) general jurisdiction; or (2) specific jurisdiction. *See Moncrief*, 414 S.W.3d at 150; *PHC–Minden*, 235 S.W.3d at 166; *Moki Mac*, 221 S.W.3d at 575–76; *Am. Type*, 83 S.W.3d at 806; *Assurances Generales*, 282 S.W.3d at 696.

### i. Specific Jurisdiction

Specific jurisdiction refers to personal jurisdiction over a nonresident defendant in a lawsuit that arises out of or is related to the nonresident defendant's contacts with the forum state. *Moki Mac*, 221 S.W.3d at 576; *Capital Tech.*, 270 S.W.3d at 749; *Assurances Generales*, 282 S.W.3d at 697. When specific jurisdiction is asserted, the minimum contacts analysis focuses on the relationship between the nonresident defendant, the forum state, and the litigation. *Moki Mac*, 221 S.W.3d at 575–76; *Guardian Royal*, 815 S.W.2d at 226; *Assurances Generales*, 282

S.W.3d at 697; *Capital Tech.*, 270 S.W.3d at 749. For a court to exercise specific jurisdiction over a nonresident defendant, two requirements must be met: (1) the nonresident defendant's contacts with the forum state must be purposeful; and (2) the cause of action must arise from or relate to those contacts. *See Burger King*, 471 U.S. at 474–75; *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980); *Moki Mac*, 221 S.W.3d at 579; *BMC Software*, 83 S.W.3d at 796; *Assurances Generales*, 282 S.W.3d at 697; *Capital Tech.*, 270 S.W.3d at 749–50.

When a plaintiff brings multiple claims that arise from different forum contacts of the defendant, the plaintiff must establish specific jurisdiction for each claim. *Moncrief*, 414 S.W.3d at 150. As a result the jurisdictional contacts must be analyzed on a claim-by-claim basis. *Moncrief*, 414 S.W.3d at 150. However, courts need not assess contacts on a claim-by-claim basis if the claims arise from the same forum contacts. *Moncrief*, 414 S.W.3d at 150.

### (1) Purposeful Availment

Purposeful availment is the touchstone of the jurisdictional due process analysis. *Asahi*, 480 U.S. at 109–10; *Burger King*, 471 U.S. at 474; *Int'l Shoe*, 326 U.S. at 316; *Michiana*, 168 S.W.3d at 784; *Guardian Royal*, 815 S.W.2d at 226–27; *Assurances Generales*, 282 S.W.3d at 697; *Capital Tech.*, 270 S.W.3d at 750. A nonresident defendant's activities must be purposefully directed toward the forum state so that the nonresident defendant could foresee being haled into court there. *See Burger King*, 471 U.S. at 474; *World–Wide Volkswagen*, 444 U.S. at 297; *Assurances Generales*, 282 S.W.3d at 697; *Capital Tech.*, 270 S.W.3d at 750. There are three parts to a purposeful availment inquiry: (1) only the nonresident defendant's contacts with the forum are relevant, not the unilateral activity of another party or a third person; (2) the contacts relied on must be purposeful rather than random, fortuitous, or attenuated; and (3) the nonresident defendant must seek some benefit, advantage, or profit by availing itself of the jurisdiction. *Burger King*, 471 U.S. at 474–75; *Moki Mac*, 221 S.W.3d at 575; *Michiana*, 168

S.W.3d at 784–85; *Guardian Royal*, 815 S.W.2d at 226; *Assurances Generales*, 282 S.W.3d at 697; *Capital Tech.*, 270 S.W.3d at 750.

## (2) Alleged Liability Arises From or Relates To Contacts

Specific jurisdiction is established when the nonresident defendant's alleged liability arises from or is related to activity conducted within the forum. *World–Wide Volkswagen*, 444 U.S. at 293–94; *Moki Mac*, 221 S.W.3d at 576; *BMC Software*, 83 S.W.3d at 796; *Guardian Royal*, 815 S.W.2d at 227; *Assurances Generales*, 282 S.W.3d at 697–98. The "arises from or relates to" requirement lies at the heart of specific jurisdiction by defining the required nexus between the nonresident defendant, the litigation, and the forum state. *Moki Mac*, 221 S.W.3d at 579; *Assurances Generales*, 282 S.W.3d at 698. In order for a nonresident defendant's contacts in a forum state to support an exercise of specific jurisdiction, there must be a substantial connection between those contacts and the operative facts of the litigation. *Moki Mac*, 221 S.W.3d at 585; *Assurances Generales*, 282 S.W.3d at 698.

## b. Traditional Notions of Fair Play and Substantial Justice

In addition to minimum contacts, the exercise of personal jurisdiction over a nonresident defendant must comport with traditional notions of fair play and substantial justice. *See Asahi*, 480 U.S. at 113; *Burger King*, 471 U.S. at 476; *BMC Software*, 83 S.W.3d at 795; *Assurances Generales*, 282 S.W.3d at 698; *Capital Tech.*, 270 S.W.3d at 750. If the court concludes that minimum contacts with the forum state exists, the court then proceeds to evaluate those contacts in light of five factors to determine if the assertion of jurisdiction comports with traditional notions of fair play and substantial justice. *Crithfield v. Boothe*, 343 S.W.3d 274, 286 (Tex. App.—Dallas 2011, no pet.); *Petrie v. Widby*, 194 S.W.3d 168, 175 (Tex. App.—Dallas 2006, no pet.). The five factors are: (1) the nonresident defendant's burden; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief;

(4) the interstate judicial system's interest in obtaining an efficient resolution to disputes; and (5) the state's common interest in furthering fundamental, substantive social policies. *Burger King*, 471 U.S. at 477. When a nonresident defendant has purposefully established minimum contacts with the forum state, it will be only a rare case when the exercise of jurisdiction does not comport with traditional notions of fair play and substantial justice. *Guardian*, 815 S.W.2d at 231; *Assurances Generales*, 282 S.W.3d at 698.

### D. Trial Court's Conclusions of Law - Minimum Contacts

In issue three, Lombardo argues the trial court erred when it denied his special appearance because there was no allegation by Bhattacharyya or evidence offered by Bhattacharyya of specific Texas contacts by Lombardo for each claim. Lombardo's issue has two sub-arguments: (1) Bhattacharyya failed to meet his initial burden to plead sufficient facts to confer jurisdiction over Lombardo; and (2) when reviewed on a claim-by-claim basis, the evidence and the trial court's findings of fact fail to establish sufficient Texas contacts to confer specific personal jurisdiction over him.

First, we address Lombardo's argument that Bhattacharyya's "vague, non-specific allegations as to 'Defendants' generally, are insufficient to meet his [initial] burden" to plead sufficient allegations on a claim-by-claim basis. We construe this argument to challenge the trial court's conclusion that "Bhattacharyya met his initial burden to plead allegations sufficient to confer jurisdiction by showing that [] Lombardo does business in the State." Bhattacharyya's second amended petition states, in part, the following with regard to jurisdiction:

> Th[e] [trial] [c]ourt has jurisdiction over [Valtech Solutions, Lombardo, and Nores] based on Valtech's ongoing business operations in the State of Texas, the torts [] Lombardo and Nores committed in Texas and the events which give rise to this litigations, as described in detail below.

Bhattacharyya's second amended petition alleged claims for defamation and intentional infliction of emotional distress against Lombardo. In his supplemental petition, Bhattacharyya added

claims for fraud, fraudulent inducement, and negligent misrepresentation against Lombardo. We conclude that Bhattacharyya's allegations that Lombardo committed torts in Texas satisfied his initial burden of alleging a cause of action sufficient to confer jurisdiction under the Texas long-arm statute. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 17.042(a); *Moncrief*, 414 S.W.3d at 149.

Next, we address Lombardo's contention that the evidence and the trial court's findings of fact fail to establish sufficient Texas contacts to confer specific personal jurisdiction over him when reviewed on a claim-by-claim basis. With regard to his fraud, fraudulent inducement, and negligent misrepresentation claims, Bhattacharyya responds the evidence shows that Lombardo willingly and voluntarily travelled to Texas to negotiate a corporate acquisition, discussed the acquisition and Bhattacharyya's role and compensation in the new company with Bhattacharyya during his visits, and when Bhattacharyya was not paid as promised, Lombardo travelled to Texas to assure Bhattacharyya the commitments would be fulfilled. With regard to his intentional infliction of emotional distress and defamation claims, Bhattacharyya contends the evidence shows Lombardo admitted discussing the defamatory statements about Bhattacharyya with Valtech employees during a trip to Dallas, Texas, for the purpose of determining whether to terminate Bhattacharyya.

As previously noted, neither the trial court's findings of fact nor its conclusions of law are rendered in separately numbered paragraphs. Rather, the findings and conclusions are in memorandum opinion and narrative format. The trial court analyzed the fraud, fraudulent inducement, and negligent misrepresentation claims together focusing on facts the trial court viewed as common to these claims. Similarly, the trial court analyzed the defamation and intentional infliction of emotional distress claims together focusing on the common facts to these claims. We need not address each claim on a claim-by-claim basis if they arise from the same

forum contacts. *See Moncrief*, 414 S.W.3d at 150. Accordingly we will address Lombardo's arguments as to Bhattacharyya's claims in the same manner as the trial court.

The trial court's conclusions of law that Lombardo had sufficient Texas contacts to confer specific personal jurisdiction over him on Bhattacharyya's fraud, fraudulent inducement, and negligent misrepresentation claims are supported by the following findings of fact:

- Lombardo voluntarily made several trips to Texas during the relevant time period.

- From the [s]ummer of 2009 through December 2010, [] Lombardo personally attended meetings in Dallas to negotiate acquisition of Adea Technologies, Inc.

- During these visits, [] Lombardo and [] Bhattacharyya (Adea's then CEO) had detailed discussions on (1) the approach for merging the two companies, (2) details of the Valtech-Adea Asset Purchase Agreement ("APA"), (3) incentives for [] Bhattacharyya and the Adea team, (4) the strategy of the combined entities, and (5) [] Bhattacharyya's role in Valtech.

- Bhattacharyya and [] Lombardo had long hours of discussions at the N[YLO] Hotel in Irving, at Adea's offices in Dallas, and at restaurants m the Dallas area.

- These discussions included several promises made by [] Lombardo to compensate [] Bhattacharyya for his commitment and sacrifices at Adea since [] Bhattacharyya had led Adea as CEO from 2006 to 2010, and promises that [] Lombardo would "take care" of [] Bhattacharyya.

- These negotiations and discussions culminated in the formation of the APA, and [] Bhattacharyya's execution of an Employment Agreement with Valtech.

- Lombardo does not specifically deny that any of these discussions took place.

- Lombardo did state that he did not visit Dallas to participate in negotiations over the APA, a statement that is contradicted by the sworn declarations of [] Bhattacharyya and [] DuPont.

- Lombardo's verified statement is silent as to whether or not he had any of the discussions or made any of the promises that were not kept, as set out in [] Bhattacharyya' s verified statement.

- Per his Employment Agreement and repeated promises made by [] Lombardo during visits to Texas, [] Bhattacharyya was entitled to various performance bonuses, incentive bonuses, stock options, and other benefits.

–28–

- After [] Bhattacharyya entered into his Employment Agreement with Valtech, [] Lombardo personally attended a "COMEX" meeting of Valtech executives in Dallas-including [] Bhattacharyya-that took place in January 2012.

- During a break in this meeting, [] Bhattacharyya asked [] Lombardo to approve [] Bhattacharyya's performance bonus, which had not been paid.

- Later in the evening, [] Bhattacharyya and [] Lombardo again discussed this issue in [] Bhattacharyya's car.

- During that discussion, [] Lombardo assured [] Bhattacharyya that he was Lombardo's friend, and that [] Lombardo would live up to his commitments.

- [A]round April 30, 2012, [] Lombardo called [] Bhattacharyya and said he wanted a meeting alone with [] Bhattacharyya's wife so that he could personally assure [her] that [] Bhattacharyya would be given his performance bonuses, shares, and stock options.

- None of the promises described above were kept.

- In his verified statement, [] Lombardo admits that he attended the January 2012 "COMEX" meeting.

- [Lombardo's] declaration is silent about the discussions with [] Bhattacharyya that took place during and after that meeting, and he does not deny making any of the promises [] Bhattacharyya details in his declaration.

- Nor does [] Lombardo deny making the April 30, 2012 phone call discussed in [] Bhattacharyya's declaration.

- When [] Bhattacharyya did not receive the payments that were owed to him under his Employment Agreement and promised to him by [] Lombardo, [] Bhattacharyya submitted his notice of intent to terminate the Employment Agreement for "Good Reason" on October 31, 2012.

- Per his agreement, a termination for "Good Reason" would have entitled [] Bhattacharyya to a $250,000 severance payment and additional compensation.

- Lombardo responded to [] Bhattacharyya's notice by sending him letters dated November 6, 2012 and November 12, 2012, both of which [] Bhattacharyya received in Texas.

- In those letters, [] Lombardo promised to pay [] Bhattacharyya's 2011 performance bonus, and urged [] Bhattacharyya to withdraw his notice of intent to terminate the Employment Agreement.

- After receiving these written promises from [] Lombardo, [] Bhattacharyya withdrew his notice on November 13, 2012.

- [Lombardo] made all of his trips voluntarily, and voluntarily participated in the discussions . . . detailed in [] Bhattacharyya's declaration.

We are bound by the trial court's unchallenged findings of fact and have already concluded there was legally and factually sufficient evidence to support the challenged findings of fact. *See MasterGuard*, 2013 WL 4482976, at *5; *Hotel Partners*, 847 S.W.2d at 632. These findings set out in detail several alleged statements made to Bhattacharyya by Lombardo while Lombardo was in Texas, supporting Bhattacharyya's fraud, fraudulent inducement, and negligent misrepresentation claims. Accordingly, we conclude that the trial court's findings of fact establish sufficient Texas contacts to confer specific personal jurisdiction over Lombardo as to Bhattacharyya's fraud, fraudulent inducement, and negligent misrepresentation claims.

With regard to Bhattacharyya's claims for defamation and intentional infliction of emotional distress, the trial court's conclusions of law that Lombardo had sufficient Texas contacts to confer specific personal jurisdiction over him on these claims are supported by the following findings of fact:

- Following [] Bhattacharyya's withdrawal of notice of intent to terminate the Employment Agreement, [] Lombardo again travelled to Dallas on November 26, 2012 to discuss [] Bhattacharyya's employment at Valtech.

- During this visit, [] Lombardo "discussed" alleged defamatory statements made by two Valtech employees, and received an update on an internal "investigation" of [] Bhattacharyya that began on the same day [] Bhattacharyya withdrew his notice.

- Bhattacharyya alleges that [Valtech Solutions, Lombardo, and Nores] concocted this internal investigation in order to trump up reasons to terminate him "for Cause" (and thereby avoid the $250,000 severance payment), and that [Valtech Solutions, Lombardo, and Nores] republished defamatory statements and committed intentional infliction of emotional distress during the course of this "concocted" investigation.

- [T]he Court finds that [] Lombardo voluntarily travelled to Texas to participate in discussions about the investigation that forms the basis of [] Bhattachar[y]ya's claims.

–30–

- The Court further finds that [] Bhattacharyya was terminated "for Cause" on November 30, 2012 via correspondence from [] Lombardo that [] Bhattacharyya received in Texas.

Again, we are bound by the trial court's unchallenged findings of fact and have already concluded there was legally and factually sufficient evidence to support the challenged findings of fact. *See MasterGuard*, 2013 WL 4482976, at \*5; *Hotel Partners*, 847 S.W.2d at 632. These findings set out in detail Lombardo's participation in the investigation surrounding and the republishing of the allegedly defamatory statements made by Shankar and Gvozdenovic with other Valtech employees while Lombardo was in Texas, supporting Bhattacharyya's defamation and intentional infliction of emotional distress claims. Accordingly, we conclude that the trial court's findings of fact establish sufficient Texas contacts to confer specific personal jurisdiction over Lombardo as to Bhattacharyya's defamation and intentional infliction of emotional distress claims.

Issue three is decided against Lombardo.

### E. Trial Court's Conclusions of Law - Fair Play and Substantial Justice

In issue five, Lombardo argues the trial court erred when it denied his special appearance because the exercise of jurisdiction over him does not comport with traditional notions of fair play and substantial justice.[9] Lombardo claims the burden placed on him is extraordinarily high because he lives in Chaumont-Gistoux, Belgium and works at Valtech's headquarters in Paris, France. Further, Lombardo claims Texas has no overriding interest in exercising jurisdiction over him to adjudicate this dispute because Bhattacharyya has potential recourse against Valtech Solutions, Nores, and seven other defendants he added after filing his notice of appeal. Bhattacharyya responds that the burden on Lombardo is minimal because he has already shown a

---

[9] Lombardo also argues it is unfair to exercise jurisdiction over him as to the new and untimely claims for fraud and negligent misrepresentation. However, we have already concluded that Lombardo failed to preserve his complaint that the trial court erred when it denied his written objection to Bhattacharyya's supplemental petition, which added the fraud, fraudulent inducement, and negligent misrepresentations claims.

willingness to travel to Texas, which has a strong interest in adjudicating a dispute involving a Texas resident harmed by allegedly fraudulent and defamatory statements. Further, Bhattacharyya argues he has a strong interest in obtaining convenient and effective relief and Lombardo's presence in the lawsuit is critical for an efficient resolution of the disputes. Finally, Bhattacharyya claims that "Texas' common interest in furthering fundamental, substantive social policies is benefitted by exercising jurisdiction over Lombardo by allowing Texas courts to resolve claims brought against someone who willingly and deliberately came to Texas and made promises and statements in Texas that allegedly harmed a Texas resident."

The trial court's conclusions of law that the exercise of jurisdiction over Lombardo does not offend traditional notion of fair play and substantial justice are supported by the following two findings of fact:

- Lombardo has previously demonstrated a willingness to travel to Texas.

- [Lombardo] visited the state on several occasions during negotiations over the APA, continued to visit Texas throughout the term of [] Bhattacharyya's Employment Agreement, and made multiple trips to Texas in 2012.

As we previously noted, we are bound by the trial court's unchallenged findings of fact. *See MasterGuard*, 2013 WL 4482976, at \*5; *Hotel Partners*, 847 S.W.2d at 632.

In his special appearance, Lombardo argued that "To hold otherwise [the fiduciary shield doctrine does not bar jurisdiction] would violate fundamental concepts of fair play and make every agent of an investor in a national business personally subject to the jurisdiction of each state when the national business has contacts." Lombardo's brief in support of his special appearance argued that the exercise of jurisdiction would offend traditional notions of fair play and substantial justice, in relevant part, because "It would be unfair to subject Lombardo to jurisdiction in Texas due solely to Valtech S.A.'s ownership of Valtech Solutions and Lombardo's actions that were performed in his role as an officer of Valtech S.A.," "The burden

of defending litigation in Texas, a place where Lombardo has never lived or worked, would be a substantial burden on Lombardo and his family," and "[Bhattacharyya] has not presented any fact to show that Lombardo committed any act in Texas, let alone to support his allegation that Lombardo committed any tort in Texas."

Lombardo has already shown his willingness to travel to Texas when he travelled on multiple occasions during the acquisition negotiations and three times in 2012. Moreover, distance alone is not ordinarily sufficient to defeat jurisdiction as "modern transportation and communication have made it much less burdensome for a party sued to defend himself in a State where he engages in economic activity." *Guardian*, 815 S.W.2d at 231 (citing *McGee v. Int'l Life Ins. Co.*, 355 U.S. 220, 223 (1957)). We cannot conclude further travel to defend this lawsuit will be a burden to Lombardo. Accordingly, we conclude the trial court did not err when it denied Lombardo's special appearance because the exercise of jurisdiction over him comports with traditional notions of fair play and substantial justice.

Issue five is decided against Lombardo.

## VI. CONCLUSION

Lombardo did not preserve for appellate review his issue that the trial court erred when it overruled his written objection to Bhattacharyya's supplemental petition. Also, we need not address Lombardo's claim that the exercise of general jurisdiction is barred by the fiduciary shield doctrine because the trial court explicitly concluded there was specific jurisdiction. Lombardo failed to preserve for appellate review his contention that the fiduciary shield doctrine barred the exercise of specific jurisdiction. In addition, the evidence is legally and factually sufficient to support the trial court's challenged findings of fact. Finally, the trial court did not err when it concluded there were sufficient contacts with Texas and the exercise of personal

–33–

jurisdiction over Lombardo comported with traditional notions of fair play and substantial justice.

The trial court's order denying Lombardo's special appearance is affirmed.

/Douglas S. Lang/
DOUGLAS S. LANG
JUSTICE

131583F.P05



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

SEBASTIAN LOMBARDO, Appellant

No. 05-13-01583-CV      V.

SHOUVIK BHATTACHARYYA, Appellee

On Appeal from the 116th Judicial District Court, Dallas County, Texas
Trial Court Cause No. DC13-00133.
Opinion delivered by Justice Lang.  Justices Myers and Brown participating.

In accordance with this Court's opinion of this date, the trial court's order denying appellant SEBASTIAN LOMBARDO'S special appearance is **AFFIRMED**.

It is **ORDERED** that appellee SHOUVIK BHATTACHARYYA recover his costs of this appeal from appellant SEBASTIAN LOMBARDO.

Judgment entered this 30th day of July, 2014.