**Reversed and Rendered; Opinion Filed December 13, 2016.**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

### No. 05-16-00486-CV

### CROSSROADS FINANCIAL, LLC, Appellant
### V.
### A.D.I.M. GLOBAL CO. LTD, Appellee

**On Appeal from the 191st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-14-14416**

# MEMORANDUM OPINION
Before Justices Francis, Fillmore, and Myers
Opinion by Justice Fillmore

Crossroads Financial, LLC ("Crossroads") appeals the trial court's order denying its special appearance. *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(7) (West Supp. 2016). For the reasons that follow, we conclude Crossroads's contacts with Texas are insufficient to create either specific or general personal jurisdiction. Accordingly, we reverse the trial court's order as to Crossroads and render judgment dismissing appellee's claims against Crossroads.

## INTRODUCTION

Appellee A.D.I.M. Global Co., Ltd. ("ADIM"), a Chinese limited partnership, sued Crossroads and other parties contending it was not paid in full for goods it shipped from China to the United States. ADIM asserted tort and contract claims against Crossroads and its employees James Rothman, Tricia Sherry, and Branka Thorstad. Crossroads is a Florida limited liability company with its principal place of business in Boca Raton, Florida. Rothman, Sherry, and

Thorstad are residents of Florida. Crossroads, Rothman, Sherry, and Thorstad filed a special appearance. The trial court granted the special appearance as to the three individuals, but denied it as to Crossroads. This appeal followed.

## PERSONAL JURISDICTION

Texas courts may exercise personal jurisdiction over a nonresident defendant "when the state's long-arm statute authorizes such jurisdiction and its exercise comports with due process." *Cornerstone Healthcare Grp. Holding, Inc. v. Nautic Mgmt. VI, L.P.*, 493 S.W.3d 65, 70 (Tex. 2016), *petition for cert. filed*, No. 16-522 (U.S. Oct. 17, 2016). The Texas long-arm statute provides in relevant part that "in addition to other acts that may constitute doing business," a nonresident does business in Texas if the nonresident contracts by mail or otherwise with a Texas resident and either party is to perform the contract in whole or in part in this state, or if the nonresident commits a tort in whole or in part in this state. TEX. CIV. PRAC. & REM. CODE ANN. § 17.042(1), (2) (West 2015). This statute "provides for personal jurisdiction that extends to the limits of the United States Constitution, and so federal due process requirements shape the contours of Texas courts' jurisdictional reach." *Searcy v. Parex Res., Inc.*, 496 S.W.3d 58, 66 (Tex. 2016).

"[W]hether a trial court's exercise of jurisdiction is consistent with due process requirements turns on two requirements: (1) the defendant must have established minimum contacts with the forum state; and (2) the assertion of jurisdiction cannot offend traditional notions of fair play and substantial justice." *Id.* (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "[S]ufficient minimum contacts exist when the nonresident defendant 'purposefully avails itself of the privilege of conducting activities within the forum [s]tate, thus invoking the benefits and protections of its laws.'" *Id.* at 66–67 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)). In *Searcy*, the court explained: "[t]he nub of the purposeful

availment analysis is whether a nonresident defendant's conduct in and connection with Texas are such that it could reasonably anticipate being haled into court here." *Id.* at 67. The defendant must purposefully direct contacts into the forum state. *Id.* (citing *Guardian Royal Exch. Assurance, Ltd. v. English China Clays, P.L.C.*, 815 S.W.2d 223, 228 (Tex. 1991)).

When determining whether a nonresident purposefully availed itself of the privilege of conducting activities in Texas, we consider three factors: (1) only the defendant's contacts with the forum are relevant, not the unilateral activity of another party or third person; (2) the contacts relied upon must be purposeful rather than random, isolated, or fortuitous; and (3) the defendant must seek some benefit, advantage, or profit by availing itself of the jurisdiction. *Cornerstone Healthcare Grp. Holding, Inc.*, 493 S.W.3d at 70–71. This analysis assesses the quality and nature of the contacts, not the quantity. *Moncrief Oil Int'l, Inc. v. OAO Gazprom*, 414 S.W.3d 142, 151 (Tex. 2013). A defendant will not be haled into a jurisdiction based solely on contacts that are random, isolated, or fortuitous, or on the unilateral activity of another party or a third person. *Michiana Easy Livin' Country, Inc. v. Holten*, 168 S.W.3d 777, 785 (Tex. 2005); *Guardian Royal Exch.*, 815 S.W.2d at 226.

In addition to minimum contacts, due process requires the exercise of personal jurisdiction to comply with traditional notions of fair play and substantial justice. *Moncrief Oil Int'l, Inc.*, 414 S.W.3d at 154 (citing *Retamco Operating, Inc. v. Republic Drilling Co.*, 278 S.W.3d 333, 338 (Tex. 2009)). "If a nonresident has minimum contacts with the forum, rarely will the exercise of jurisdiction over the nonresident not comport with traditional notions of fair play and substantial justice." *Id.* at 154–55. This evaluation is undertaken in light of the following factors, when appropriate:

> (1) the burden on the defendant; (2) the interests of the forum state in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate or international judicial system's interest in obtaining the most

efficient resolution of controversies; and (5) the shared interest of the several nations or states in furthering fundamental substantive social policies.

*Spir Star AG v. Kimich*, 310 S.W.3d 868, 878 (Tex. 2010).

The plaintiff bears the initial burden of pleading allegations that suffice to permit a court's exercise of personal jurisdiction over the nonresident defendant. *Searcy*, 496 S.W.3d at 66. Once the plaintiff has met this burden, the defendant then assumes the burden of negating all potential bases for personal jurisdiction that exist in the plaintiff's pleadings. *Id.* The defendant can negate jurisdiction on either a factual or legal basis. *Kelly v. Gen. Interior Constr., Inc.*, 301 S.W.3d 653, 659 (Tex. 2010). A defendant negates jurisdiction on a factual basis by presenting evidence to disprove the plaintiff's jurisdictional allegations. *Id.* "The plaintiff can then respond with its own evidence that affirms its allegations, and it risks dismissal of its lawsuit if it cannot present the trial court with evidence establishing personal jurisdiction." *Id.* (footnotes omitted). A defendant negates jurisdiction on a legal basis by showing that "even if the plaintiff's alleged facts are true, the evidence is legally insufficient to establish jurisdiction; the defendant's contacts with Texas fall short of purposeful availment; for specific jurisdiction, that the claims do not arise from the contacts; or that traditional notions of fair play and substantial justice are offended by the exercise of jurisdiction." *Id.*

A defendant's contacts with a forum may give rise to either general or specific jurisdiction. *KC Smash 01, LLC v. Gerdes, Hendrichson, Ltd., L.L.P.*, 384 S.W.3d 389, 392 (Tex. App.—Dallas 2012, no pet.). ADIM asserts Crossroads's contacts with Texas support the exercise of both specific and general jurisdiction.

### A. Specific Jurisdiction

Specific jurisdiction is based on "whether the defendant's activities in the forum state themselves 'give rise to the liabilities sued on.'" *Searcy*, 496 S.W.3d at 67 (quoting *Int'l Shoe*, 326 U.S. at 317). Specific jurisdiction exists when the plaintiff's claims "arise out of" or are

"related to" the defendant's contacts with the forum. *Id.* (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 nn. 8, 9 (1984)). The defendant's relationship with the forum state, not the plaintiff's relationship, is the proper focus of the specific jurisdiction analysis. *Id.* Courts must consider the relationship between the defendant, the forum state, and the litigation. *Id.*

"'[F]or a nonresident defendant's forum contacts to support an exercise of specific jurisdiction, there must be a substantial connection between those contacts and the operative facts of the litigation.'" *Moncrief Oil Int'l, Inc.*, 414 S.W.3d at 156 (quoting *Moki Mac River Expeditions v. Drugg*, 221 S.W.3d 569, 585 (Tex. 2007)). "'[B]ut-for causation alone is insufficient.'" *Leonard v. Salinas Concrete, LP*, 470 S.W.3d 178, 188 (Tex. App.—Dallas 2015, no pet.) (quoting *Moncrief Oil Int'l, Inc.*, 414 S.W.3d at 157). "'The operative facts are those on which the trial will focus to prove the liability of the defendant who is challenging jurisdiction.'" *Id.* (quoting *Kaye/Bassman Int'l Corp. v. Dhanuka*, 418 S.W.3d 352, 357 (Tex. App.—Dallas 2013, no pet.)). We analyze specific jurisdiction on a claim-by-claim basis, unless we are shown that all claims arise from the same contacts with Texas. *Moncrief Oil Int'l, Inc.*, 414 S.W.3d at 150.

### B.    General Jurisdiction

When a defendant's continuous operations within a state are "'so substantial and of such a nature as to justify a suit against it on causes of action arising from dealings entirely distinct from those activities,'" a court may exercise general jurisdiction over the defendant. *Searcy*, 496 S.W.3d at 71 (quoting *International Shoe Co.*, 326 U.S. at 318). "[M]ore recent Supreme Court cases have clarified that the general jurisdiction analysis entails a high bar." *Id.* at 72. "[A] court has general jurisdiction over a defendant only if its 'affiliations with the [s]tate are so continuous and systematic as to render it *essentially at home* in the forum [s]tate.'" *Id.* (quoting

–5–

*Daimler AG v. Bauman*, 134 S.Ct. 746, 761 (2014), emphasis added in *Searcy*). "Continuous and systematic contacts that fail to rise to this relatively high level are insufficient to confer general jurisdiction over a nonresident defendant." *Id.* (citing *Daimler AG*, 134 S.Ct. at 761). In sum, "[c]ourts do not have general jurisdiction over corporate defendants that are neither incorporated in the forum state nor have their principal place of business there, absent some relatively substantial contacts with the forum state." *Id.* (citing *Daimler AG*, 134 S.Ct. at 761–62).

## STANDARD OF REVIEW

The question whether a court has personal jurisdiction over a nonresident defendant is a question of law we review de novo. *Moncrief Oil Int'l, Inc.*, 414 S.W.3d at 150 (citing *Moki Mac River Expeditions*, 221 S.W.3d at 574). "When, as here, the trial court does not issue findings of fact and conclusions of law, we imply all relevant facts necessary to support the judgment that are supported by the evidence." *Id.* (citing *Retamco Operating, Inc.*, 278 S.W.3d at 337).

## FACTUAL BACKGROUND

At a trade show in Dallas, ADIM agreed to sell goods to Alma-Mater Collection, LLC ("Alma-Mater"), a Georgia limited liability company (the "Alma-Mater transaction"). ADIM advised Alma-Mater's principal Jenna Lee Kimsey Meharg that it would not ship the goods without either advance payment or secured financing through a letter of credit. Meharg, a resident of Georgia, contacted Crossroads to obtain financing for the purchase. Crossroads assisted Alma-Mater in obtaining a letter of credit from Sterling National Bank CST, Inc., a New York corporation. ADIM alleges that although it shipped the goods from China to the United

States,[1] it was paid for only one of four shipments. In this lawsuit, ADIM seeks $98,442.00 for the unpaid shipments of goods in addition to other damages. ADIM alleges that representatives of Crossroads made false representations about the shipments, the letter of credit, and payment for the goods, among other matters.

ADIM relies on the following contacts to support specific jurisdiction:

- Crossroads provided financing for a transaction that was initiated in Dallas;

- Crossroads acted as Alma-Mater's agent in the transaction;

- Crossroads made misrepresentations to representatives of ADIM by telephone and email which the ADIM representatives received in Texas; and

- Crossroads knew the ADIM representatives receiving the misrepresentations were located in Texas.

ADIM relies on the following contacts to support general jurisdiction:

- Approximately three percent of Crossroads's business is in Texas;

- Crossroads has filed two lawsuits in Texas in the past;

- In connection with one of the lawsuits, Crossroads hired Texas counsel, and a Crossroads representative flew to Texas for a deposition;

- Crossroads maintains a website that is accessible in Texas;

- Crossroads has filed Uniform Commercial Code (UCC) liens with the Texas Secretary of State; and

- Sherry was involved on Crossroads's behalf in two transactions with Texas entities.

ADIM also relies heavily on its own contacts with Texas, offering evidence that it has been doing business in Texas since 2008; has its principal place of business in Irving, Texas; has an office and a storefront in Texas; and owns and operates a website showing Texas contact information. Majid Javed, the President of ADIM, testified that he uses a phone with a 469 area

---

[1] Although the record does not clearly reflect whether the goods were in fact delivered to Alma-Mater in Georgia, for purposes of this appeal, no party contends the goods were to be shipped to or through Texas.

code. Roger Arora, an "associate" of ADIM, testified that when he communicated with Crossroads personnel, he told them he was in Texas.

Crossroads sought to negate jurisdiction on both a factual and legal basis. Crossroads filed the affidavit of Michael Anise, its Chief Financial Officer, as well as the affidavits of Rothman, Sherry, and Thorstad. The depositions of Rothman and Sherry are also included in the record. Anise testified that Crossroads is a Florida limited liability company. Its principal place of business is in Boca Raton, Florida. Crossroads has no offices, branches, or employees in Texas, and does not own or lease any property in Texas. Rothman, Sherry, and Thorstad testified that they are not Texas residents and do not own or lease any property in Texas. Although Rothman acknowledged that approximately three percent of Crossroads's business is in Texas, he also indicated that Crossroads did not attend trade shows in Texas or have any special marketing plans directed at Texas.

In her affidavit, Sherry testified that she was "the person at Crossroads primarily responsible for dealing with [ADIM]"; her communications with ADIM were primarily by telephone and email; and her only communications with ADIM were with its representatives, agents, or employees in China. She also stated:

> I based the fact that my only communications with A.D.I.M. have been with representative[s], agents, or employees of A.D.I.M. in China on the fact that:
>
> a.　　When calling, A.D.I.M., I dialed a Chinese telephone number; and
>
> b.　　Written communications from A.D.I.M. to me, written communications from A.D.I.M. which I was carbon-copied on; or written communications from A.D.I.M. which were subsequently forwarded to me, included statements, references, and/or signature blocks indicating that the sender was located in China.

In support, Crossroads attached copies of communications with ADIM as exhibits to Sherry's affidavit or to its special appearance. ADIM responds that three of these communications are "emails where in [sic] ADIM's representative Roger Arora identified himself in the United

States." Of the three communications, however, only one page references "my associate Roger in USA to be part of conversation as well this time" in an email from Javed to Sherry. There is no reference to Texas.

In her deposition, Sherry testified she was told by Alma-Mater that ADIM was located in China and that the letter of credit was to be drafted to a Chinese bank. She was also told that the goods were to be shipped from China to Atlanta, Georgia. Sherry testified she never knew that ADIM had offices in Texas.[2] The record includes several demand letters to Crossroads from attorneys in China who alleged that Crossroads had violated Chinese law by failing to pay ADIM, as well as other documents written in Chinese.

Crossroads also relies on communications in the record from Javed using his ADIM email address. These communications contained references to Javed's presence in China, and discussed activity related to the Alma-Mater transaction that was taking place in China.[3]

In his affidavit filed with ADIM's response to the special appearance, Javed identified eighteen documents relating to the Alma-Mater transaction. None of these eighteen exhibits has any reference to Texas. Many of the documents bear an address for ADIM. Every such reference is an address in Hong Kong, China.

Crossroads does not dispute the facts on which ADIM relies to establish general jurisdiction, but contends those facts are insufficient to establish general jurisdiction as a matter of law. Several other jurisdictional facts are not disputed by either party:

- No representative of Crossroads participated in the initial sale by ADIM to Alma-Mater at the Dallas trade show;

---

[2] Crossroads also offered evidence that ADIM did not register to do business in Texas until February 5, 2015, more than a month after it filed this lawsuit.

[3] These references include Javed's statements that he is "driving back from shanghai"; that "it is almost 3 am in china and I was in middle of sleep!"; that ADIM will "pursue all legal option available to us here in China and in USA"; apologizing "for the late reply as it was weekend here in China"; and expressing concern "how we get the [letter of credit] funds released here by presenting the proper documents before the shipment arrives USA as this is air shipment and we do not control it once it leaves China."

- No representative of Crossroads was located in Texas or traveled to Texas in connection with the Alma-Mater transaction;

- Crossroads's contractual relationship was with Alma-Mater, not ADIM; and

- For the Alma-Mater transaction, Crossroads obtained a letter of credit for a Georgia client from a New York bank to facilitate shipment of goods from China to Georgia.

### ANALYSIS

In one issue, Crossroads contends the trial court erred by denying its special appearance. Crossroads argues there is no specific jurisdiction because it did not purposefully direct its activities relating to the Alma-Mater transaction toward Texas. It argues there is no general jurisdiction because it is not "essentially at home" in Texas. We address each contention in turn.

### A. Specific Jurisdiction

#### 1. Tort claims

ADIM relies on the same allegations for its fraud, deceptive trade practices, and negligent misrepresentation claims, contending that Crossroads made false representations to ADIM regarding the letter of credit Crossroads obtained for the Alma-Mater transaction. It is undisputed that Crossroads, through its employees, never physically entered this state in connection with the Alma-Mater transaction. Instead, ADIM relies on representations made by telephone and email that were allegedly received by ADIM personnel in Texas.

These communications do not constitute contacts demonstrating purposeful availment. *See KC Smash 01, LLC*, 384 S.W.3d at 393 (communications through telephone or email between Texas plaintiff and foreign defendant insufficient to support exercise of specific jurisdiction) (citing *Olympia Capital Assocs., L.P. v. Jackson*, 247 S.W.3d 399, 417–18 (Tex. App.—Dallas 2008, no pet.)). We have rejected the argument that "directing a tort" at the forum state—such as Crossroads making misrepresentations to ADIM when ADIM was in Texas—is a basis for specific personal jurisdiction. *See, e.g., Olympia Capital Assocs., L.P.*, 247 S.W.3d at

–10–

406 ("Specific jurisdiction is not established merely by allegations or evidence that a nonresident committed a tort in the forum state or 'directed a tort' at the forum state.") (citing *Michiana Easy Livin' Country, Inc.*, 168 S.W.3d at 790–92); *Stanton v. Gloerson*, No. 05-16-00214-CV, 2016 WL 7166550, at *11 (Tex. App.—Dallas Nov. 30, 2016, n. pet. h.) (mem. op.).

Instead, the defendant's alleged liability must arise out of or relate to the defendant's activities conducted in the forum. *Olympia Capital Assocs., L.P.*, 247 S.W.3d at 406 (citing *Hall*, 466 U.S. at 414 n.8). There must be a substantial connection between the nonresident's contacts with the forum and the operative facts of the litigation. *Id.* (citing *Moki Mac River Expeditions*, 221 S.W.3d at 585). Here, there is no such connection. ADIM contends only that Crossroads knew that some of its misrepresentations were received by ADIM personnel in Texas. Every other operative fact relating to ADIM's claims arose elsewhere except the original transaction between Alma-Mater and ADIM, which according to Javed's testimony took place at a Dallas trade show in "early 2014." But there is no allegation that Crossroads had any involvement in the transaction until it was contacted by Alma-Mater in June 2014, and no allegation of any activity related to the transaction by Crossroads in Texas other than phone calls or emails into Texas. Especially in light of Crossroads's evidence connecting ADIM and the Alma-Mater transaction to China, ADIM failed to establish that Crossroads "purposefully avail[ed] itself of the privilege of conducting activities" in Texas through its communications with ADIM. *See Searcy*, 496 S.W.3d at 66–67; *see also Kelly*, 301 S.W.3d at 659 (where defendant has negated jurisdiction on factual basis by presenting evidence to disprove plaintiff's jurisdictional allegations, plaintiff risks dismissal if it cannot present evidence that affirms its allegations).

ADIM relies on *Lombardo v. Bhattacharyya*, 437 S.W.3d 658 (Tex. App.—Dallas 2014, pet. denied), to support its argument that its allegations of fraud are sufficient to support the

exercise of specific jurisdiction over Crossroads. Lombardo, the defendant, was an Italian citizen who resided in Belgium. *Id.* at 664. Bhattacharyya, the plaintiff, asserted fraud and other claims against Lombardo arising from alleged misrepresentations relating to the acquisition of a Dallas-based company. *Id.* at 663–64. The trial court denied Lombardo's special appearance and made findings of fact that Lombardo made several trips to Texas in connection with the transaction; had "long hours of discussion" in person in Texas with Bhattacharyya about the transaction; did not deny the discussions took place; and made the representations that were the basis for Bhattacharyya's claims during his trips to Texas. *Id.* at 680–81. Here, in contrast, no Crossroads representative ever travelled to Texas in connection with the Alma-Mater transaction. Every alleged misrepresentation was made by telephone or email from outside Texas. Under the same circumstances in *KC Smash 01, LLC*, where the defendant did not enter Texas in connection with the transaction at issue, we explained that "fraudulent or negligent misrepresentations made through electronic media do not establish specific jurisdiction." *KC Smash 01, LLC*, 384 S.W.3d at 393.

ADIM also argues that Crossroads knew its communications were received in Texas. The court in *Searcy* addressed a similar argument. *See Searcy*, 496 S.W.3d at 74–75. There, a defendant Canadian company ("Parex Canada") negotiated the purchase of shares of a Bermudian company with operations in Houston ("Nabors") that held Columbian oil and gas assets. *See id.* at 64–65. The plaintiff's previous attempt to purchase the same shares had failed. *See id.* Parex Canada did not initiate the interactions with Nabors. *Id.* at 76. Instead, Nabors solicited its Canadian financial advisor to find potential buyers of the shares, and the financial advisor notified Parex Canada. *Id.* Parex Canada had "many interactions with Nabors" by emails and calls to Nabors personnel in Houston, but did not have any communications in person. *Id.* at 74. The court noted that Parex Canada "appears to have known that Nabors had

–12–

operations in Texas, but it did not specifically seek out a Texas seller or Texas assets, let alone attempting to meddle with a contract governed by Texas law or develop a Texas business." *Id.* at 73. The court concluded that "quantity aside," the quality and nature of Parex Canada's communications failed to establish purposeful availment:

> Discussions that focused on acquiring some non-Texan assets are a far cry from purposeful availment of Texas's jurisdiction—the Nabors employees involved could, quite literally, have been based anywhere in the world, and Parex Canada would presumably have interacted with it in the same way as they did with its employees here. Parex Canada did not purposefully avail itself of the benefits, privileges, or profits of engaging with Texas. Rather, the mere coincidence of Nabors['s] presence here—completely out of Parex Canada's control—means that the trial court lacked specific jurisdiction.

*Id.* at 74–75. Similarly, in this case Alma-Mater initiated the contact with ADIM. Alma-Mater then engaged Crossroads to assist in financing a purchase of goods from a Chinese entity. The goods were to be shipped from China. Crossroads neither sought out a Texas seller nor sought to develop Texas business. As in *Searcy*, the "mere coincidence" of ADIM's presence in Texas was completely out of Crossroads's control. *See id.* We conclude that Crossroads has negated the bases for specific personal jurisdiction regarding ADIM's tort claims.[4]

### 2. Contract claims

ADIM's petition includes a claim for breach of contract against "defendants."[5] ADIM does not contend that it directly contracted with Crossroads. Instead, ADIM alleges that "Crossroads maintains a principal-agent relationship [with] Alma-Mater and Meharg." ADIM explains in its brief:

> Crossroads continuously acted as an agent for Alma-Mater in working to establish a business transaction between two corporations. Crossroads was aware of the

---

[4] ADIM also argues that Crossroads's unrelated activities in Texas provide a basis for the exercise of personal jurisdiction, as we address below. Those activities, however, relate only to the exercise of general jurisdiction, not specific jurisdiction.

[5] In addition to Crossroads, Rothman, Sherry, and Thorstad, ADIM's operative petition asserts claims against Alma-Mater, Sterling National Bank CST, Inc., and Meharg. Neither a specific defendant nor a specific contract is referenced in ADIM's breach of contract allegations.

–13–

contract that was formed between Alma-Mater and ADIM. This contract was formed in Texas. Crossroads knew that the contract was formed in Texas with a Texas corporation, and intentionally represented that it would pay for the goods. Alma-Mater and its agent Crossroads committed a fraud on a Texas company using a Texas contract.[6]

We reject ADIM's agency argument for two reasons. First, we cannot presume an agency relationship exists between Alma-Mater and Crossroads. *See Olympia Capital Assocs., Inc.*, 247 S.W.3d at 413 ("We do not presume an agency relationship exists, and the burden of proof is on the party asserting the existence of the relationship."). There is no allegation or evidence that Crossroads was under Alma-Mater's control as to the "means and details of the process" of obtaining the letter of credit, as required for proof of agency. *See Walker v. Fed. Kemper Life Assurance Co.*, 828 S.W.2d 442, 452 (Tex. App.—San Antonio 1992, writ denied) ("Essential to an agency relationship is the principal's 'right to assign the agent's task and to control the means and details of the process by which the agent will accomplish the task.'") (quoting *Webster v. Lipsey*, 787 S.W.2d 631, 635 (Tex. App.—Houston [14th Dist.] 1990, writ denied)). ADIM itself argues to the contrary in its brief:

> Crossroads in particular is the lynchpin defendant in the relevant transactions as it had, among other things, total control of the payment for goods, the inspection of goods, waiver of Letter of Credit deficiencies, shipment of goods, and receipt of goods. In other words, Crossroads brought all of the parties together and controlled every aspect of the transfer of goods from ADIM to Alma-Mater.

Second, even presuming that Crossroads was Alma-Mater's agent does not establish jurisdiction over Crossroads. ADIM relies on *Walker Insurance Services v. Bottle Rock Power Corp.*, 108 S.W.3d 538 (Tex. App.—Houston [14th Dist.] 2003, no pet.), for its contention that the trial court had jurisdiction over Crossroads because Crossroads was Alma-Mater's agent. But in that case, the plaintiff sought to obtain jurisdiction over the alleged *principal* through the

---

[6] As record references for these allegations, ADIM cites to its Fourth Amended Original Petition. Although the operative petition for this appeal is ADIM's Third Amended Original Petition, the allegations that ADIM cites are contained in both the third and the fourth amended petitions and are the only basis for ADIM's breach of contract claim against Crossroads. In its appellate brief, ADIM also argues it was a third-party beneficiary of a contract between Alma-Mater and Crossroads. This allegation, however, is not contained in any of ADIM's pleadings.

acts of the *agent. See id.* at 549–53. Here, ADIM seeks the opposite, to obtain jurisdiction over Crossroads, the alleged agent, through the acts of Alma-Mater, the alleged principal. But the actions of a principal cannot be attributed to an agent for the purposes of establishing specific jurisdiction. *Ross F. Meriwether & Assocs., Inc. v. Aulbach*, 686 S.W.2d 730, 731 (Tex. App.—San Antonio 1985, no writ) (court lacked specific jurisdiction over agent who negotiated contract on principal's behalf). "When an agent arrives in Texas to represent his principal, only the principal is doing business in Texas." *Hotel Partners v. Craig*, 993 S.W.2d 116, 121 (Tex. App.—Dallas 1994, writ denied).

We also note that even if ADIM had contracted directly with Crossroads, "merely contracting with a resident of the forum state is insufficient to subject the nonresident to the forum's jurisdiction." *Olympia Capital Assocs.*, 247 S.W.3d at 417 (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 478–79 (1985)). We conclude that Crossroads has negated the bases for specific personal jurisdiction regarding ADIM's breach of contract claim.

### 3.    Conclusion

For each of the "three features of the 'purposeful availment' inquiry as applied to specific personal jurisdiction," Crossroads met its burden of proof. *See Searcy*, 496 S.W.3d at 67. First, considering only Crossroad's contacts and not those of other parties, Crossroads's only Texas activity arising out of the Alma-Mater transaction was its Florida-originated telephone calls and emails that were allegedly received by ADIM personnel in Texas. *See id.* (only defendant's contacts are relevant, not unilateral activity of others). As we have explained, these contacts are insufficient. *See KC Smash 01, LLC*, 384 S.W.3d at 393. Second, Crossroads's communications into Texas were entirely fortuitous, made on the occasions when Javed happened to be in Texas instead of China or when Arora participated in a telephone call or was included on the distribution of an email message. *See Searcy*, 496 S.W.3d at 67 (contacts must be purposeful

–15–

rather than random, fortuitous, isolated, or attenuated).  Third, the benefit, advantage, or profit Crossroads sought from the transaction was to arise from its contract with Alma-Mater.  *See id.* (defendant must seek some benefit, advantage, or profit by "availing" itself of the jurisdiction).  Although Alma-Mater's contract with ADIM originated in Texas, this "collateral relation" to Texas does not result from any contact by Crossroads with Texas.  *See Michiana Easy Livin' Country*, 168 S.W.3d at 788 ("'financial benefits accruing to the defendant from a collateral relation to the forum State will not support jurisdiction if they do not stem from a constitutionally cognizable contact with that State'") (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 299 (1980)).  We conclude the trial court did not have specific jurisdiction over Crossroads.

### B.    General Jurisdiction

Crossroads, a finance company, has obtained UCC liens in Texas, twice has litigated in Texas, and maintains a web page that is accessible in Texas.  Three percent of its business is with Texas residents.  We conclude that these contacts are insufficient to confer general jurisdiction.

Crossroads is a Florida company.  It has no offices or employees in Texas; its services are rendered from its principal place of business in Florida.  Ninety-seven percent of its business occurs outside Texas.  Even if Crossroads could be said to engage in continuous and systematic contacts with Texas by serving the Texas clients who comprise three percent of its business, Crossroads is not "at home" in Texas.  *See Daimler AG*, 134 S.Ct. at 761 (proper consideration for general jurisdiction is whether defendant's affiliations with the state are so continuous and systematic as to render it "essentially at home" in the forum state).  A corporation is not "at home" in every state in which it engages in a substantial, continuous, and systematic course of business.  *Id.* at 760–61.  Instead, Crossroads is "at home" in Florida, where it was incorporated,

has its principal place of business, and from where it conducts its business.[7]  *See Daimler AG*, 134 S.Ct. at 760 ("With respect to a corporation, the place of incorporation and principal place of business are 'paradig[m] . . . bases for general jurisdiction.'").[8]

ADIM argues that *Daimler AG* is distinguishable, correctly pointing out that in *Daimler AG*, the defendant corporation's own activities were not at issue.  *See Daimler AG*, 134 S.Ct. at 752.  Rather, the plaintiff sought to obtain jurisdiction in California over a German parent corporation through the California activities of its indirect subsidiary.  *See id.*  Here, ADIM asserts that Crossroads's own activities are at issue, not those of a subsidiary.  Nonetheless, the Court in *Daimler AG* explained that the general jurisdiction analysis requires "an appraisal of a corporation's activities in their entirety, nationwide and worldwide."  *Id.* at 762 n.20.  The Court continued,

> A corporation that operates in many places can scarcely be deemed at home in all of them. . . . Nothing in *International Shoe* and its progeny suggests that "a particular quantum of local activity" should give a State authority over a "far larger quantum of . . . activity" having no connection to any in-state activity.

*Id.* (citations omitted).  The Court did "not foreclose the possibility that in an exceptional case . . . a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State."  *Id.* at 761 n.19.  The Court cited the "textbook case of general jurisdiction,"

---

[7] Crossroads's maintenance of a website accessible in Texas does not alter our conclusion that Crossroads is not "essentially at home" in Texas.  Even "repeated contacts with forum residents" through an interactive website "may not constitute the requisite substantial, continuous and systematic contacts required for a finding of general jurisdiction."  *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014) (citing and quoting *Revell v. Lidov*, 317 F.3d 467, 470–71 (5th Cir. 2002)).  Although a defendant may be doing business "with" Texas through its website, it is not doing business "in" Texas as required for general jurisdiction.  *Id.*  We have explained that "[e]ven if a website is highly interactive, that fact is but one factor to consider in determining whether general jurisdiction exists."  *Klug v. Wickert*, No. 05-14-00080-CV, 2015 WL 4338424, at *6 (Tex. App.—Dallas Jul. 16, 2015, no pet.) (mem. op.).  As in *Klug*, nothing in this record shows that Crossroads "made any particular effort to target or attract Texas customers" through its website.  *See id.*  In *Klug*, we concluded that "[a]ny contacts with Texas through the website were random, isolated, and fortuitous."  *Id.*

[8] The Court quotes Lea Brilmayer, Jennifer Haverkamp, and Buck Logan, *A General Look at General Jurisdiction*, 66 TEX. L. REV. 721, 735 (1988).

*Perkins v. Benguet Consolidated Mining Co.*, 342 U.S. 437 (1952), as such an exceptional case. *Daimler AG*, 134 S.Ct. at 755–56. In *Perkins,* a Philippine corporation temporarily relocated to Ohio. *Perkins*, 342 U.S. at 447–48. The corporation's president resided in Ohio, the records of the corporation were kept in Ohio, director's meetings were held in Ohio, accounts were held in Ohio banks, and all key business decisions were made in Ohio. *Id.* General jurisdiction was appropriate because Ohio was the corporation's principal, if temporary, place of business. *Daimler AG*, 134 S.Ct. at 756. There is no comparable evidence in this record.[9]

Crossroads's activity in Texas is more akin to the contacts described in *Helicopteros Nacionales de Colombia, S.A. v. Hall*. *See Hall*, 466 U.S. at 416. In that case, the defendant Helicol was a Colombian corporation. It had no place of business in Texas and had never been licensed to do business here. *Id.* Its chief executive officer had traveled once to Texas to negotiate a transportation services contract. *Id.* It had accepted checks drawn on a Texas bank, and had purchased helicopters and equipment from a Texas manufacturer. *Id.* Its employees had traveled to Texas for training. *Id.* Despite these contacts (which Texas courts had found sufficient to confer general jurisdiction) the Supreme Court held that Helicol's contacts with Texas were insufficient to satisfy constitutional due process requirements. *Id.* at 418–19.

ADIM also relies on evidence of ADIM's own business activity in Texas and Crossroads's purported knowledge that ADIM was a Texas entity. But the unilateral activity of another party is not an appropriate consideration when determining whether a defendant has sufficient contacts with a forum state to justify an assertion of jurisdiction. *Id.* at 417.

We conclude the trial court had no general jurisdiction over Crossroads.

---

[9] ADIM relies heavily on two Texas lawsuits in which Crossroads was a plaintiff, attaching the petitions to its special appearance response. One of the petitions attaches several written contracts to which Crossroads was a party. We note that each of these contracts provides for the application of Florida law in the event of a dispute.

**CONCLUSION**

We sustain Crossroads's sole issue.[10]   Because the trial court erred by denying Crossroads's special appearance, we reverse that portion of the trial court's order.  We render judgment dismissing Crossroads from this cause for lack of jurisdiction.

/Robert M. Fillmore/

ROBERT M. FILLMORE
JUSTICE

160486F.P05

---

[10] Because we have concluded that Crossroads does not have the required minimum contacts with Texas, we need not consider whether the assertion of jurisdiction over Crossroads would be consistent with traditional notions of fair play and substantial justice.  *See Olympia Capital Assocs., L.P.*, 247 S.W.3d at 422 n.8.



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

CROSSROADS FINANCIAL, LLC,
Appellant

No. 05-16-00486-CV      V.

A.D.I.M. GLOBAL CO. LTD, Appellee

On Appeal from the 191st Judicial District
Court, Dallas County, Texas
Trial Court Cause No. DC-14-14416.
Opinion delivered by Justice Fillmore;
Justices Francis and Myers participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **REVERSED** and judgment is **RENDERED** that:

The claims of appellee A.D.I.M. Global Co. Ltd. against appellant Crossroads Financial, LLC are dismissed.

It is **ORDERED** that appellant Crossroads Financial, LLC recover its costs of this appeal from appellee A.D.I.M. Global Co. Ltd.

Judgment entered this 13th day of December, 2016.